*In re* MARRIAGE OF RUTH C. GUNTREN, Petitioner-Appellee, and FRANK A. GUNTREN, Respondent-Appellant.

Fourth District   No. 4—85—0290

Opinion filed February 13, 1986.

Christopher B. Hunter, of Farrell & Long, P.C., of Godfrey, and John W. Guntren, of Jerseyville, for appellant.

James R. Heil, of Alton, for appellee.

JUSTICE MORTHLAND delivered the opinion of the court:

The petitioner, Ruth Guntren, and the respondent Frank Guntren, were married in Jersey County, Illinois, on April 27, 1979. Both had been previously married and divorced. As a result of her prior marriage the petitioner received $400 per month in child support and $15,000 per year maintenance. She was a registered nurse. The respondent was an insurance agent.

On December 9, 1983, the petitioner filed a petition for dissolution of the marriage. Respondent thereafter filed an answer and counterpetition for dissolution. At the time the petition was filed, petitioner was 52 years of age and respondent was 49. An order was entered on March 2, 1984, dissolving the marriage and reserving issues of property, maintenance and debt allocation. The trial court held several hearings concerning property disposition and entered its order with refer-

ence to the assignment of nonmarital property and division of marital property and indebtedness on January 23, 1985.

The respondent appeals this order, contending: (1) The trial court abused its discretion in that: (a) the marital property was not divided in just proportions; and (b) the trial court failed to properly consider and apply the statutory factors concerning property division; (2) The trial court erred when it failed to reimburse the respondent for nonmarital funds contributed to marital property; (3) The trial court erred in the division of personal property and the assignment of debts; and (4) The trial court erred when it denied respondent's motion for reimbursement of temporary support.

An extensive recitation of the facts is necessary in order to resolve these issues. In June of 1979 the parties purchased a 63½-acre farm and residence. Title was taken in joint tenancy. The purchase price was $78,000, with $38,000 required as the down payment, and apparently a $40,000 mortgage given to secure the balance. The parties do not question the eventual finding by the court that this farm was marital property.

After the marriage each party maintained separate, individual checking accounts. The petitioner had separate funds consisting of support payments for her two minor children and the maintenance payment from her former marriage. During the Guntren marriage she earned approximately $2,000. The respondent kept his earnings from his insurance agency in his separate checking account. According to his testimony, his net earnings for 1979 were $13,438.07; for 1980, $8,121.40; for 1981, $12,403.41; and for 1982, $6,447.24.

A joint savings account was established on June 7, 1979. The original deposit in this account was $59,000. Petitioner testified that this deposit included funds from the sale of a house that had belonged to her mother, funds paid to her by her ex-husband, and other funds which came from her checking account.

The parties appear to agree that the original $59,000 placed in the savings account was used in part as follows: $5,000 for the purchase of a pontoon boat; $38,000 as down payment on the farm; $3,500 for farm renovation; and $12,000 withdrawn by respondent and stated to be for farm renovation. An annuity belonging to the petitioner prior to the marriage was cashed in December of 1979. The respondent testified that this produced the sum of $15,619.55. He further testified that $12,000 of this was paid on the mortgage and $2,181.91 was paid on interest, the remaining balance of $1,437.64 was used for renovation of the property.

Testimony revealed that on June 2, 1980, $13,100 was deposited in

the couple's joint savings account, with $1,500 placed in the petitioner's account. Petitioner contended that these funds came from the maintenance payments of her former husband.

The respondent testified that on August 6, 1981, the petitioner contributed an additional $4,000 to be paid on the mortgage principal.

The petitioner testified that she spent $2,000 of nonmarital funds to renovate the upstairs bedroom.

The respondent, with respect to his nonmarital funds, states that he came into the marriage with $12,000 from a fire loss, approximately $13,000 from the sale of his residence and $18,246.12 from inheritances, and that he expended these funds for principal and interest on the mortgage and on repairs and renovations for the residence. He argues, in addition, that he expended not only his personal earnings but also considerable labor in renovating the farm residence.

The respondent in his brief concedes that petitioner made contributions to the marital real estate amounting to $69,609.55, although this sum would include $2,181.91 mortgage interest. It does not include the original $3,500 used for farm renovation, $2,000 allegedly spent by petitioner for renovation of the upstairs bedroom, and $1,437.64 spent on renovation out of the funds from the annuity check. Our calculations show a figure of $74,365.28 of petitioner's traceable nonmarital funds invested in the marital real estate.

The respondent testified that in his opinion the real estate was worth $120,000, while a real estate appraiser testified that it was worth $89,000. The principal balance on the mortgage was $14,777.93.

The trial court entered judgment on property division and debt allocation and in the process assigned respondent his nonmarital property and awarded him marital property consisting of a Navion airplane and a 1977 pickup truck. The respondent was assigned the debt of $9,000 on the airplane, $1,102 on business leads, and $7,305.54 on a loan at the Jersey State Bank. The petitioner was assigned her nonmarital property. In addition, she was assigned the entire marital real estate, two automobiles, the farm equipment and all household goods and furniture other than the nonmarital property assigned to respondent. The petitioner was also assigned the $14,777.93 mortgage indebtedness, a debt to Fleming Oil Company in the sum of $789.03, and one to Ed Koenig in the sum of $548. The latter two debts were for fuel for the farm tractor and for combining wheat. The crop check in the sum of $1,971 was assigned to petitioner also.

■ Section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat., 1984 Supp., ch. 40, par. 503(d)) states that the trial court "shall divide the marital property without regard to marital

misconduct in just proportions," subject to the consideration of 11 enumerated factors. While a fair division does not require that the marital estate be split in equal portions (*In re Marriage of McMahon* (1980), 82 Ill. App. 3d 1126, 403 N.E.2d 730), the touchstone of proper apportionment is whether it is equitable in nature (*In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 453 N.E.2d 748). In determining whether a trial court abused its discretion, the appropriate inquiry appears to be whether the court, in view of the totality of circumstances, acted such that no reasonable man would take the view it adopted. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126, 129.) A disproportionate award of marital property has been upheld where one party made substantial contributions during the marriage and the other party made few contributions. *In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 383 N.E.2d 1065.

One of the relevant factors that the trial court must consider in dividing marital property is the one specified in section 503(d)(1) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat., 1984 Supp., ch. 40, par. 503(d)(1)), which states:

> "[T]he contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit."

In making the determination with respect to the contribution of each to the marital estate, it is up to the trial court to examine the evidence and give to it the weight the court determines that it deserves. In this case the trial court in its order pointed out that the petitioner made large, traceable cash contributions toward property acquired during the marriage. It further pointed out in its order that the respondent's contributions of material and labor were indefinite and in any event small relative to petitioner's large contributions. It appears that the trial court chose to disbelieve the respondent's testimony regarding his large expenditures on the marital property. We cannot and do not find an abuse of discretion on the part of the trial court.

The respondent's assertion that the trial court failed to consider the 11 statutory factors set out in sections 503(d)(1) through (11) (Ill. Rev. Stat. 1983, ch. 40, pars. 503(d)(1) through (11)), is without merit. The trial court stated in its decision that it had carefully considered the relevant statutory factors, with emphasis on sections 503(d)(1) and (7), regarding disposition of the real estate. It further stated that it had considered the relevant factors under section 503 in dividing the marital property and debts. The trial court need not make specific findings with reference to each of the 11 statutory factors. *In re Marriage of*

*Walsh* (1982), 109 Ill. App. 3d 171, 440 N.E.2d 310; *In re Marriage of Lipsch* (1980), 86 Ill. App. 3d 81, 407 N.E.2d 1028.

■■ The respondent's second major contention is that the trial court erred by failing to comply with section 503(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat., 1984 Supp., ch. 40, par. 503(c)).

Section 503(c)(1) provides in substance that when marital and nonmarital property are commingled, resulting in a loss of identity of the nonmarital estate, the commingled property is transmuted into marital property. Under section 503(c)(2) the contributing estate shall be reimbursed from the estate receiving the contribution. Hence, if nonmarital property is transmuted into marital property, the party contributing the nonmarital property is entitled to reimbursement of the value of such property provided: (1) the contribution is traceable by clear and convincing evidence; and (2) the contributor did not make a gift of the nonmarital property to the marital estate.

In the case we here consider, the parties on appeal take the position that neither intended nor in fact made a gift of nonmarital property to the marital estate. The petitioner specifically so testified, while the respondent testified that he did not consider the petitioner to be making a gift when she expended funds on the marital property. The trial court specifically found that no gift to the marital estate or to the respondent was made or intended by the petitioner.

The question then arises whether any purported contribution by the respondent of nonmarital funds or property to the marital estate was traceable by clear and convincing evidence. The trial court thought not, and we find no abuse of discretion in this regard. It is true that the respondent testified as to the extent of his nonmarital property and how he applied it to the marital property. The record does not show that his testimony was supported in any way by documentation or other evidence. The matter of believability rests with the trier of fact, and one can only conclude that the trial court here did not consider respondent's evidence of contribution to the marital estate to be clear and convincing.

The trial court did properly apply section 503(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat., 1984 Supp., ch. 40, par. 503(c)); hence, we find no error in this regard.

■ The respondent's next major assertion is that the trial court erred in dividing the personal property and indebtedness when it awarded the farm implements and equipment to the petitioner, yet at the same time ordered the respondent to pay the $7,305.54 loan at the Jersey State Bank. The respondent says that this loan was made pri-

marily to purchase this farm equipment, and petitioner should thus be required to satisfy it. While the record is not entirely clear on the exact manner in which the bank loan was established, we are convinced that it was primarily established for the purchase of the farm equipment and implements. We believe that this loan should follow the farm equipment and implements and should be set off to the petitioner. We conclude that the trial court abused its discretion in this regard and upon remand, the order must be modified to so provide.

■ Finally, the respondent contends that the court erred in denying his motion for reimbursement of court-ordered temporary support. In examining this proposition, we must look to all the evidence heard before the court, and to the order entered at the hearing on petitioner's petition for temporary support on January 6, 1984. At that hearing, the petitioner testified that her only assets consisted of a $10,000 annuity and an $8,000 money market account. The court ordered the respondent to pay petitioner's utility bills. As a result respondent paid utility bills totalling $1,382.86. He thereafter filed a motion requesting reimbursement of this amount because the petitioner had falsely testified at the January 6, 1984, hearing, concerning her assets. The petitioner testified at the November 2, 1984, hearing on respondent's motion that she in fact owned additional funds in the sum of approximately $13,800 at the time of the hearing on temporary support, and that she owned as well one lot of land in Carbondale and one lot in Florida. She also testified that between January 1984 and November 1984 she earned $7,000 from her employment as a nurse. The trial court denied reimbursement but modified the order so that petitioner was required to pay utilities on and after October 1, 1984. How the trial court viewed the petitioner's failure to testify at the January hearing concerning the additional assets cannot be determined from the record. It is clear, however, that the trial court stated that the additional assets would not have had a bearing on its January order since it was based primarily upon the fact that the petitioner was unemployed at the time. We find no error in the trial court's denial of reimbursement.

With respect to the judgment of the circuit court of Jersey County we affirm in part, reverse in part, and remand for entry of orders in accordance with our directions.

Affirmed in part and reversed in part and remanded with directions.

WEBBER and GREEN, JJ., concur.