CREE DEVELOPMENT CORPORATION, Plaintiff-Appellant, v. MID-AMERICA ADVERTISING COMPANY, Defendant-Appellee.

Fifth District   No. 5—95—0576

Opinion filed April 30, 1997.

Thomas F. Crosby, of Winters, Brewster, Crosby & Patchett, of Marion, for appellant.

James B. Bleyer, of Bleyer & Bleyer, of Marion, John H. Doeringer, of Matteson, and Steven G. Bailey, of St. Louis, Missouri, for appellee.

JUSTICE MAAG delivered the opinion of the court:

This is an action for ejectment arising out of a dispute over the placement of a Steak 'n Shake billboard sign by the defendant, Mid-America Sign Company (Mid-America). It is important to note that this dispute is between the plaintiff, Cree Development Corporation (Cree Development), the owner of the fee that is burdened by the railroad right-of-way, and Mid-America. Crab Orchard and Egyptian Railroad (Crab Orchard) is not a party to this suit. The trial court entered judgment for Mid-America on the ejectment count but awarded $700 to Cree Development pursuant to the Wrongful Tree

Cutting Act (740 ILCS 185/2 (West 1992)). Cree Development appeals the June 15, 1994, order that granted "judgment for Mid-America on the ejectment count," as well as the July 21, 1995, order that granted "judgment in favor of *** Mid-America *** and against *** Cree Development *** on all other issues raised by [Cree Development's] Second Amended Complaint per this Court's Order of June 15, 1994."

The relevant facts are as follows. Cree Development, by quitclaim deed dated June 18, 1992, acquired a fee simple interest subject to a railroad right-of-way and other easements, grants, rights-of-way, or covenants of record in the contested land. It is undisputed that, prior to that date, Cree Development owned, in fee, the land south of the right-of-way. Henry Mitchell, Cree Development's owner and operator, and his wife deeded the property to Cree Development in 1978. Cree Development constructed and owns a Comfort Inn, Comfort Suites, and the 20's Hideout Restaurant on the land and adjoining parcels south of the right-of-way. It is undisputed that Cree Development's property is bounded on the east by Interstate 57, on the south by Old Illinois Route 13, and on the north by the quarter-quarter section line dividing the Northwest Quarter of the Southwest Quarter of Section Fourteen of West Marion Township from the Southwest Quarter of the Southwest Quarter of said section.

A review of the record shows that the property in question was transferred as follows:

| Date | Description of transaction |
| --- | --- |
| 8/9/1871 | Original right-of-way granted to Carbondale and Shawneetown Railway (original conveyance stated that it was conveyed for "right[-]of[-]way purposes only, to revert when not used as such a right[-]of[-]way, fifty feet wide where said road may pass through the Southwest Fourth of the Southwest Quarter of Section 14; *** Township 9 South, Range 2 East of 3d P.M., in Williamson County, Illinois"). |
| 6/12/1919 | Illinois Central Gulf Railroad (Illinois Central) succeeded to the right-of-way by this date, although the record is unclear as to the precise date. |
| 10/14/1976 | Illinois Central filed an application with the Interstate Commerce Commission (Commission) seeking a certificate of public convenience and necessity permitting abandonment of its branch line extending from railroad milepost 93.5 near Seely, Illinois, to milepost 108.0 at Mande, Illinois. |

| | |
|---|---|
| 4/4/1977 | American Rail Heritage, Ltd., doing business as Crab Orchard and Egyptian Railroad, sought authority pursuant to section 1(18) of the Interstate Commerce Act, since repealed, now located at 49 U.S.C. § 10901 (49 U.S.C.A. § 10901 (West 1997)), to acquire and operate a portion of the line of railroad proposed for abandonment between railroad milepost 99.47 near Ordill, Illinois, to railroad milepost 108.0 at Mande, Illinois. |
| 10/13/1978 | The Commission's administrative law judge's findings reflected the abandonment of Illinois Central's branch line of railroad between milepost 93.5 near Seely, Illinois, to milepost 99.47 at Ordill, Illinois, and dismissed that portion of Illinois Central's application for abandonment of the railroad line extending from milepost 99.47 at Ordill, Illinois, to milepost 108.0 at Mande, Illinois. The Commission granted Crab Orchard the right to acquire and authority to operate a railroad on the 8.53-mile line east of Ordill. |
| 6/20/1979 | The Illinois Central granted to the City of Marion (City) an easement for railroad purposes over a "parcel *20* feet wide, being 10 feet each side of said main track." (Emphasis added.) |
| 11/29/1979 | The United States Court of Appeals for the Seventh Circuit subsequently affirmed the Commission's decision. *People v. Interstate Commerce Comm'n*, No. 79—1005 (7th Cir. November 29, 1979) (unpublished order pursuant to Circuit Rule 35). |
| 4/9/1980 | The City granted to Crab Orchard the same easement. According to the agreement, Crab Orchard agreed to pay a total purchase price of $209,000 to the City over a period of eight years. Upon Crab Orchard's payment of the total purchase price, the City agreed to "convey by proper deed of conveyance to *** [Crab Orchard] all interest it owns in the railroad property, right[-]of[-]way, rail and appurtenances conveyed by the Illinois Central Gulf Railroad on June 20, 1979, and the City shall assign to *** [Crab Orchard] the easement received by the City from the Illinois Central Gulf Railroad on said date." |
| 6/1/1992 | Crab Orchard entered into an easement agreement with Mid-America whereby Mid-America was to erect two advertising billboards on the right-of-way. |

According to the easement agreement, Crab Orchard granted Mid-America an easement for placement of the billboards on the right-of-way that it had acquired from the City. Mid-America was granted "a perpetual easement on, over and across the property more particularly described in Exhibit A attached hereto and incorporated herein by this reference (the 'Easement Property') to be used in common with Grantor and its employees, agents, contractors, guests, invitees and licensees for the purposes and upon the terms and conditions provided herein." Furthermore, the agreement stated as follows:

*"EXHIBIT 'A'*
*(TO EASEMENT AGREEMENT DATED ~~MAY~~ JUNE 1, 1992)*
A strip of right-of-way whose centerline runs parallel to but $9^1/2$ feet south of the centerline of the railroad track structure for a distance of five hundred feet (500') with its eastern end being five hundred feet (500') west of the I-57 west right-of-way line. All of the above is located on the northern edge of the S.W. $1/4$ of the S.W. $1/4$ of Sec. 14, T9S-R2E, Williamson County, Illinois. Also known as between R.R. *m.p. 104.05* and 104.15." (Emphasis and strikeout in original.)

The agreement required that the sign be not less than eight feet from the centerline of the tracks. One of those signs was a 12-foot by 25-foot billboard advertising Crab Orchard, which Mid-America constructed at a cost of approximately $12,000. Mid-America maintains and supplies utilities for this sign free of charge to Crab Orchard. The other sign, the one in question, was constructed at a cost of between $39,000 and $43,000 and is a 20-foot by 60-foot uni-pole billboard advertising Steak 'n Shake Restaurant.

It is undisputed that the original right-of-way that was granted to Illinois Central extended 50 feet and that the City only acquired, by the Illinois Central deed, 20 feet of right-of-way. This same 20-foot easement was granted to Crab Orchard from the City and from Crab Orchard to the defendant. Paul Gayer, professional land surveyor, testified that the Steak 'n Shake sign was not within the right-of-way that had been granted to Crab Orchard. Gayer testified that he determined that the sign was outside Crab Orchard's 10 feet of property on either side of the centerline of the tracks and was actually located 12.61 feet south of the southernmost rail, which was 14.61 feet south of the centerline.

Hugh Crane, president, chief executive officer, and chairman of the board for Crab Orchard, testified that when the sign was being erected, he "stressed vehemently" that Mid-America was erecting the sign outside of the limits permitted by the agreement between

Crab Orchard and Mid-America. At the time that Crane informed Mid-America that it was outside of the right-of-way, Mid-America had not yet completed construction of the sign. Despite Crane's efforts, Mid-America proceeded to erect the sign. Crane testified that he personally measured the sign's distance from the railroad tracks and that the sign is outside of 10 feet from the centerline of the track.

Cree Development filed this action for ejectment on June 17, 1992, claiming that the sign in question was erected and stands outside of the 20-foot right-of-way described in the agreement between the Illinois Central and the City.

On June 18, 1992, Cree Development obtained fee simple title by quitclaim deed from the grantor, Harriet M. Goodall, to certain real property more particularly described as follows:

> "*The North Fifty (50) feet of the Southwest Fourth (SW 1/4) of the Southwest Quarter (SW 1/4) of Section 14,* and twenty-seven and one-half (27 1/2) acres of equal width off the East side of the Southeast Fourth (SE 1/4) of the Southeast Quarter (SE 1/4) of Section 15, Township 9 South, Range 2 East of the Third P.M., Williamson County, Illinois.
> \*\*\*
> Subject to a Railroad [r]ight-of-way." (Emphasis added.)

Subsequent to the trial court's ruling on June 15, 1994, that granted "judgment for Mid-America on the ejectment count," as well as the July 21, 1995, order that granted "judgment in favor of \*\*\* Mid-America \*\*\* and against \*\*\* Cree Development \*\*\* on all other issues raised by [Cree Development's] Second Amended Complaint per this Court's Order of June 15, 1994," Cree Development filed a timely notice of appeal.

■ Because the aforementioned material facts in this case are uncontroverted on appeal, the issue in the case at hand is the circuit court's application of the law to such facts. Hence, a question of law is presented, and the rule that a court of review may not set aside the circuit court's findings unless contrary to the manifest weight of the evidence is inapplicable. *South Suburban Safeway Lines, Inc. v. Regional Transportation Authority*, 166 Ill. App. 3d 361, 365 (1988). The correctness of the ruling on a question of law may be determined independently of the circuit court's judgment. *Safeway*, 166 Ill. App. 3d at 365. In the absence of any material question of fact, the construction and legal effect of an instrument raise a question of law. *Selby v. DuQuoin State Bank*, 223 Ill. App. 3d 104, 107 (1991).

In the instant case the court made factual findings that included the following: "There is no evidence of abandonment of the right[-

]of[-]way" and "The Court finds that the advertising scheme pursuant to which [Crab Orchard] authorized Mid-America to place the sign on right[-]of[-]way it controls is consistent with railroad purposes and promotes railroad business." Cree Development did not challenge either of these, or any other, findings of fact by the trial court. Since Cree Development does not challenge the findings of the trial court, we need not review *de novo* these findings.

■ As we previously stated, Cree Development filed an ejectment proceeding in the circuit court in order to recover the subject right-of-way. According to section 6—104 of the Code of Civil Procedure (735 ILCS 5/6—104 (West 1994)), "No person shall recover in ejectment unless he or she has, *at the time of commencing the action*, a valid subsisting interest in the premises claimed, and a right to recover the same, or to recover the possession thereof, or of some share, interest or portion thereof, to be proved and established at the trial." (Emphasis added.)

In the instant case, Cree Development filed its ejectment complaint on June 17, 1992. Cree Development did not obtain title to the aforementioned property until June 18, 1992. Hence, Cree Development did not have a valid interest in the premises claimed at the time that it commenced the action. Even if Cree Development had not filed its ejectment action prematurely, the outcome would be the same.

■ In order for a plaintiff to recover in an ejectment proceeding, it must allege (1) that it had possession of the subject premises after obtaining legal title, (2) that defendant subsequently took possession of the premises, and (3) that, at present, the defendant unlawfully withholds from the plaintiff the possession thereof. *Bulatovic v. Dobritchanin*, 252 Ill. App. 3d 122, 128 (1993). All of the elements of ejectment must be proved in order to maintain the action. It is a "time-honored principle that a plaintiff in ejectment must recover on the strength of his own title rather than the weakness of his adversary's title." *Old Salem Chautauqua Ass'n v. Illinois District Council of The Assembly of God*, 13 Ill. 2d 258, 265 (1958). The plaintiff in an ejectment proceeding must have an interest in the premises which is "higher and better" than defendant's claim that entitles him to possession, in order to recover the property. *Bulatovic*, 252 Ill. App. 3d at 129.

■ Cree Development cites *Dickman v. Madison County Light & Power Co.*, 304 Ill. 470 (1922), in support of its position that defendant should have been ejected from the premises. In *Dickman,* the Illinois Supreme Court stated, "The owner of the fee of land subjected to the public easement of a railroad company may maintain an action of

trespass or an action of ejectment against any other person whose entry or acts upon the premises would support the action, unless such person can justify under the authority of the railroad company having the easement." *Dickman*, 304 Ill. at 480. See also *Mitchell v. Illinois Central R.R. Co.*, 384 Ill. 258, 264 (1943).

Hence, the real question in this case is whether Mid-America can justify its presence on the right-of-way due to some type of authority from Crab Orchard. In order for us to answer this question, it is necessary to determine if the Commission, in its ruling, implicitly determined that the entire easement, rather than the 20-foot easement, was transferred from Illinois Central to Crab Orchard and, ultimately, to Mid-America.

Mid-America argues that because the Commission granted Crab Orchard operating authority over a certain strip of land, Crab Orchard is entitled to the entire easement, even though the agreement between Illinois Central and the City specifically states that the easement is only 20 feet wide. We agree.

According to the United States Constitution, Congress shall have the power to "regulate Commerce with foreign Nations, and among the several States." U.S. Const., art. I, § 8, cl. 3. The Commission's power to regulate abandonments by rail carriers derives from the Transportation Act of 1920, ch. 91, 41 Stat. 477-78, which added to the Interstate Commerce Act a new section 1(18), recodified at 49 U.S.C. § 10903(a) (Supp. 1978). See *Chicago & North Western Transportation Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 319, 67 L. Ed. 2d 258, 266, 101 S. Ct. 1124, 1131 (1981).

The United States Supreme Court has held that the authority of the Commission to regulate abandonments is exclusive. *Alabama Public Service Comm'n v. Southern Ry. Co.*, 341 U.S. 341, 346, 95 L. Ed. 1002, 1007, 71 S. Ct. 762, 766 (1951). We also recognize that "[t]he exclusive and plenary nature of the Commission's authority to rule on carriers' decisions to abandon lines is critical to the congressional scheme, which contemplates comprehensive administrative regulation of interstate commerce" and that the "breadth of the Commission's statutory discretion suggests a congressional intent to limit judicial interference with the agency's work." *Kalo Brick & Tile Co.*, 450 U.S. at 321, 67 L. Ed. 2d at 267-68, 101 S. Ct. at 1132. Moreover, according to 49 U.S.C.A. § 10903(d) (West 1997), a rail carrier subject to the jurisdiction of the Commission may abandon any part of its railroad lines, or discontinue operations, "*only if* the Board finds that the present or future public convenience and necessity require or permit the abandonment or discontinuance." (Emphasis added.)

■ In the case at hand, Cree Development had the burden of

showing that it had an interest in the right-of-way which was higher and better than defendant's claim and that it was entitled to present possession. See *Bulatovic*, 252 Ill. App. 3d at 129. There is no question that Cree Development is the record owner of "[t]he North Fifty (50) feet of the Southwest Fourth (SW 1/4) of the Southwest Quarter (SW 1/4) of Section Fourteen (14), Township Nine (9) South, Range Two (2) East of the Third Principal Meridian, situated in the County of Williamson, State of Illinois" subject to, *inter alia*, a railroad right-of-way. That fact has not been appealed. Additionally, there is no dispute that rail operations have not ceased, and there has been no grant of abandonment of the right-of-way by the Commission.

Cree Development argues that the Commission granted Crab Orchard operating authority over less than the full width of the 8.53-mile-long strip. Cree Development fails, however, to cite to anything that would support its assertion that the Commission intended to convey less than the entire width of the right-of-way. Cree Development appears to be relying on the weakness of Crab Orchard's title, while overlooking the fact that its sole claim to the remainder of the right-of-way arises by a quitclaim deed that, on its face, is subject to a railroad right-of-way. It is important to note that it is elementary property law that a quitclaim deed will convey whatever title or interest the grantor may have in the land at the time it is given and only such title and interest. *Bryant v. Lakeside Galleries, Inc.*, 402 Ill. 466 (1949). Cree Development purchased only what Harriet Goodall owned at the time that she transferred the property by quitclaim deed to Cree Development. It appears that Goodall owned a piece of property subject to a railroad right-of-way. Hence, Cree Development purchased a fee that has been burdened since the 1800s by a railroad right-of-way. Cree Development's acquisition of the fee in no way changed Crab Orchard's rights and property interests to the right-of-way in question. Although we recognize that Cree Development cites to documents in existence subsequent to the Commission's decision that would lend support to its argument that only 20 feet of right-of-way were conveyed, the fact remains that the Commission has sole jurisdiction over granting abandonments, and there is nothing in its order that would suggest that it intended for Crab Orchard to receive less than Illinois Central possessed while it operated that particular line of railroad. In fact, even though Illinois Central attempted to reserve a portion of the right-of-way for itself when it purportedly transferred the right-of-way to the City, it appears that Illinois Central had no authority to do so because the Commission, by operation of law, had already transferred the entire easement to Crab Orchard.

We have examined the Commission's initial decision (defendant's exhibit 1), the Commission's subsequent decision (defendant's exhibit 2), and the United States Court of Appeals' decision (defendant's exhibit 3) and have failed to find anything contained within those decisions that would suggest that the Commission intended to convey to Crab Orchard anything less than Illinois Central had in its possession while it operated that particular line. Because the Commission has exclusive jurisdiction over abandonment proceedings, and Cree Development has failed to show that the Commission intended to convey anything less than Illinois Central had in its possession, we refuse Cree Development's invitation to find to the contrary.

Since Cree Development has failed to meet its burden, and because it cannot recover property from one who is in lawful possession (see *Bulatovic*, 252 Ill. App. 3d at 129), we affirm the circuit court's decision.

We note that we did not further examine the *Dickman* and *Mitchell* decisions because they are demonstrative of the broad scope of activity which is permitted in furtherance of rail activity. See *Dickman*, 304 Ill. at 480; *Mitchell*, 384 Ill. at 264. Cree Development has not contested the finding of fact by the trial court that the advertising scheme pursuant to which Crab Orchard authorized Mid-America to place the sign on the right-of-way it controls is consistent with railroad purposes and promotes railroad business. Therefore, because this finding was not appealed, we will not address that particular issue.

In light of the foregoing considerations, we affirm the Williamson County circuit court's decision granting judgment on the ejectment count in Mid-America's favor.

Affirmed.

WELCH and CHAPMAN, JJ., concur.