s:\hanas.ord

No. 1-99-2564 FIRST DIVISION

December 26, 2000

In re MARRIAGE OF ) Appeal from the

) Circuit Court of 

GAIL W. DIDIER, ) Cook County. 

) 

Petitioner-Appellee and Cross-Appellant, ) 

) No. 97 D 613 

and ) 

)

MARTIN W. DIDIER,
 ) The Honorable 

) Patricia Banks, 

Respondent-Appellant and Cross-Appellee. ) Judge Presiding. 

JUSTICE COHEN delivered the opinion of the court:

After trial on his wife's petition for dissolution of marriage, respondent Martin W. Didier (Martin) appeals the judgment of the circuit court of Cook County. Martin asserts that the trial court erred in (1) classifying certain property as nonmarital and awarding that property to petitioner Gail A. Didier (Gail), and (2) awarding Martin inadequate maintenance.  Gail cross-appeals, claiming that the trial court erred in (1) awarding Martin any maintenance "whatsoever," (2) finding that certain funds that Gail transferred into Martin's business were a gift rather than a loan, and (3) relieving Martin of all child support obligations.  We affirm in part, reverse in part and remand.

Martin Didier and Gail Adreani were married on February 14, 1976, in Chicago, Illinois.  The couple had three children: Ryan, born May 3, 1980; Kelly, born May 22, 1982, and Kari, born April 26, 1985.  At the time of their marriage, both Martin and Gail worked outside the home.  Gail stopped working when their first child was born in 1980.  Both before and during the marriage, Gail acquired substantial corporate and partnership interests that provided investment income ranging from $600,000 to $850,000 per year.
  
Gail's income was used to support the family, including Martin.  Martin was employed by a succession of different corporations between 1976 and 1990.  Martin's highest W-2 income for any given year during this period was approximately $35,000.  As of 1990, Martin became self-employed.

The parties were in agreement as to several issues related to the dissolution and stipulated to the following facts before the trial court:

Gail is a mother and homemaker and works part-time for McDonald's.  Gail 

resides at 4161 Terri-Lyn Lane, Northbrook, Illinois, with the parties' three children.

Martin is self-employed through Integration Technologies, Inc. (ITI), a subchapter 

"S" corporation incorporated by Martin in 1990.  

Martin received as a gift from Gail's family 3.743%, or 5,600 shares, of capital 

stock in North Pier Terminal, Ltd., a closely held corporation.  This stock is Martin's nonmarital property and should be assigned to him.

Gail received as a gift from her family 3.743%, or 5,600 shares, of capital stock in 

North Pier Terminal, Ltd.  This stock is Gail's nonmarital property and should be assigned to her.

In addition to her North Pier Terminal, Ltd., stock, Gail owns the following 

corporate and partnership interests:

Name
 
 % Interest
 
# of Shares
 
Date(s) Acquired

National Terminals Corp. 19.091353 38,484.4 08-21-89  –  04-02-97

Norridge Development Corp. 10 100 12-08-92

Courts of Amber Woods, Inc. 10 100 08-21-89

Norwood Builders, Inc. 20 20 03-01-89

Norwood Plaza, Inc. 20 500 08-25-89

Adreani Farms (partnership) 20 n/a 1974

Adreani Buildings (partnership) 20 n/a 1983

The parties acquired the following vehicles during the marriage:

1998 Ford Explorer

2.         1991 Ford Explorer

1990 Ford Taurus

1999 Toyota 4Runner

1998 Saab 900

Gail is the titleholder for all of the aforementioned vehicles.  The parties have entered into an agreed order whereby Gail has assigned title of the 1990 Ford Taurus to Martin, provided that Martin takes all steps necessary to transfer title of said vehicle into his name with the Illinois Secretary of State, and Martin agrees to indemnify and hold Gail harmless with respect to the ownership and use of said vehicle.  

G. Title to the residence located at 4161 Terri-Lyn Lane, Northbrook, Illinois (the 

Northbrook home) is held in a land trust under trust agreement No. 8096 with Parkway Bank & Trust  Company.  Gail is the owner of 100% of the beneficial interest under said trust agreement.  Martin stipulates that if the residence is found to be Gail's nonmarital asset, he will not make any claims that he made marital contributions for which the marital estate is entitled to reimbursement.  The stipulated value of the property is $430,000.  There has never been a mortgage on the property. 

In addition, Gail has the following assets:

an ABN-AMRO brokerage account in the name of Gail A. Didier;

2. LaSalle Bank checking and savings accounts in the name of Gail A. Didier;

a $5,000 life insurance policy; and

all furniture, furnishings, fixtures, appliances, jewelry, clothing and other 

personal property in the Northbrook home or in her possession.  

Martin owns 100% of the stock of ITI.  ITI shows on its balance sheet, contained 

within the corporation's 1997 federal income tax return, a "Loan from Shareholders" in the amount $205,639.  

J.          In addition, Martin has the following assets:

1.         LaSalle Bank checking and savings accounts in the name of Martin W. 

Didier;

2.         a Charles Schwab IRA in the name of Martin W. Didier; 

a MONY $25,000.00 death benefit life insurance policy; and

all furniture, furnishings, fixtures, appliances, jewelry, clothing and other 

personal property in his possession.  

Martin has stipulated that neither he nor his attorney is seeking an award of 

attorneys fees from Gail.

    The record before us on appeal is lengthy and fact-intensive.  In the interests of brevity, we forego an initial recitation of the facts.  Relevant facts will be discussed as we address each of the issues on direct and cross-appeal.

I. Classification of Marital Assets

Martin appeals the trial court's classification of the Northbrook home, Gail's corporate and partnership interests and certain accounts purportedly containing investment income received from those interests as Gail's nonmarital assets.  We first consider the classification of the Northbrook home.  

The record reflects that, after their marriage in 1976, the parties lived in a condominium complex known as "Washington Golf" in Niles, Illinois.  Gail testified that one of the condominium units in the complex was a gift to her from her father, Raymond Adreani (Adreani).  Adreani was the developer responsible for building the complex.  Gail further testified that title to the condominium was held in her name only and that Martin's name had never been on the title.  Martin offered no testimony to the contrary.  In 1983, the parties began construction of the Northbrook home on a lot owned by Adreani in another of his real estate developments.  In 1984, construction of the Northbrook home was completed and the family moved in.   There was conflicting testimony as to the degree of Martin's involvement in the construction process.  Although the trial court made no specific findings of fact on this point, Gail testified that she sold her condominium and used the proceeds of the sale to finance the construction of the Northbrook home.  Gail further testified that in 1986, she paid Adreani $29,870 for the lot upon which the house was built.  In 1986, Adreani executed a quitclaim deed transferring title to the Northbrook home to the Parkway Bank and Trust Company as trustee for Gail and named Gail as the 100% owner of the beneficial interest in a land trust.  Gail testified that Martin's name had never been on the title to the Northbrook home.  The Northbrook home never had a mortgage.  Although Martin testified that he turned his paychecks over to Gail, Gail testified that all of the household expenses were paid from her nonmarital income.  The trial court found that "Gail acquired the property at 4161 Terri-Lyn Lane, Northbrook by gift from her father," and assigned that property to Gail as her nonmarital asset. 

"Before a court may dispose of property upon dissolution of marriage, the property must be classified as either marital or nonmarital.  [Citation.] 
 The trial court's classification will not be disturbed on appeal unless it is contrary to the manifest weight of the evidence."  
In re Marriage of Gurda
, 304 Ill. App. 3d 1019, 1023-24 (1999).  Under the Illinois Marriage and Dissolution of Marriage Act (the Dissolution Act) (750 ILCS 5/101 
et seq.
 (West 1998)), there is a rebuttable presumption that all property acquired by either spouse after the date of marriage but before the entry of judgment of dissolution is marital property, regardless of how title is held.  750 ILCS 5/503(b) (West 1998).  "The presumption can only be overcome with a showing, by clear and convincing evidence, that the property falls within one of the statutory exceptions listed in subsection [503](a) [of the Dissolution Act].  [Citations.]  The party claiming that the property is nonmarital has the burden of proof.  [Citation.]  Any doubts as to the nature of the property are resolved in favor of finding that the property is marital."  
In re Marriage of Hegge
, 285 Ill. App. 3d 138, 141 (1996); 750 ILCS 5/503(a) (West 1998).  

"There is another presumption that a transfer from a parent to a child is presumed to be a gift, and that presumption may be overcome by clear and convincing evidence to the contrary."  
In re Marriage of Hagshenas
, 234 Ill. App. 3d 178, 186 (1992).  "In cases where a determination of the nature of the property at issue [is] found to be subject to these conflicting presumptions, the presumptions are considered to cancel each other out, and a simple manifest weight of the evidence standard is applied.  [Citations.]"  
Hagshenas
, 234 Ill. App. 3d at 186-87.  "That is, the presumption of a gift to a child is canceled out by the conflicting presumption that all property acquired after marriage is marital property, and thus, the trial court is free to determine the issue of whether the asset in question was marital or nonmarital 
property without resort to the presumption."  
Hagshenas
, 234 Ill. App. 3d at 187. 

Therefore, without the benefit of the presumption of gift, pursuant to statute it was Gail's burden at trial to establish by the manifest weight of the evidence that she acquired the "property at 4161 Terri-Lyn Lane" as a gift from her father.  750 ILCS 5/503(a)(2) (West 1998).
(footnote: 1)  "A gift is a voluntary gratuitous transfer of property from donor to donee where the donor manifests an intent to make such a gift and absolutely and irrevocably delivers the property to the donee."  
In re Estate of Poliquin
, 247 Ill. App. 3d 112, 115 (1993); 
In re Marriage of Agazim
, 147 Ill. App. 3d 646, 648-49 (1986).

The case at bar presents us with an unusual situation: two individuals (Gail and Adreani) attempted two separate conveyances of a residential home and the lot upon which it was constructed.  From our reading of the record, the apparent understanding of the trial court and the parties was that Adreani allowed Gail and Martin to construct a house on Adreani's land in Northbrook.  Two years after the house was completed, during which time Gail and her family lived in the house, Gail paid to Adreani the sum of $29,870 (ostensibly, at least in part, from the proceeds of the sale of her nonmarital condominium) for the lot only.  The trial court concluded that Adreani had gifted the house to Gail by deeding the land upon which it rests to the Parkway Bank and Trust Company as trustee of a land trust and naming Gail as 100% owner of the beneficial interest.  The trial court ruled predicated on that conclusion, and the parties' briefs in this appeal were consistent with this scenario.

Upon analysis, however, the matter is not so neatly resolved.  The general rule derived from real property law is that "buildings and other structures placed on or affixed to the soil become part of the land and belong to its owner."  41 Am. Jur. 2d 
Improvements
 §3 (1995); 21 Ill. L. & Prac. 
Improvements
 §3 (1977).  Had this rule been operating, Adreani would have acquired title to the Northbrook home upon its completion as owner of the lot upon which it rests.

However, "[a]n exception to the general rule that improvements belong to the owner of the land is found in the well-established principle that a structure erected by one man on the land of another, 
with his permission
, does 
not
 become a part of the real estate, but continues to be the personal property of the person who erected it." (Emphasis added.)  41 Am. Jur. 2d 
Improvements
 §4 (1995).  It is certain that Gail had her father's permission to construct the Northbrook home on his lot.  "If the improvement is made by the owner's permission, an agreement that it shall remain the property of the person making it is implied, in the absence of any other facts or circumstances showing a different intention *** ."
  42 C.J.S. 
Improvements
 §3 (1991). 

In order to determine whether any facts or circumstances in the record reflect that Gail and her father intended that he own the Northbrook home upon its completion, the relevant period for our consideration is that period encompassing the construction of the home.  The record reflects that Gail built the home for her family, including Martin, and intended that they use it as their primary residence.  Gail's father was certainly aware of and approved this use of his land.  In fact, he allowed Gail and her family to live in the house for two years without making any claim of possession or ownership prior to deeding the land into trust on Gail's behalf.  In light of the principles of real property law set forth above, and after a careful review of the record, we have been unable to find any factual basis to defeat an implied agreement between Gail and her father that she would retain ownership of the Northbrook home upon its completion.  Considering the conflicting evidence with respect to Martin's involvement in the construction process and with due deference to the role of the trial court in assessing the credibility of the witnesses before it, we find under these narrow circumstances that, based on an implied agreement between Gail and her father, Gail acquired sole title to the Northbrook home upon its completion.

Our decision finds support in the actions of Gail's father himself.  In 1986, two years after the Northbrook home was built, he sold the lot to Gail for $29,870.  A signed closing statement, state and county real estate transfer declarations and Gail's own testimony support the conclusion that her father's purpose in this transaction was to sell her the
 lot only
.  Adreani then transferred the lot into trust via quitclaim deed.

The trial court found that Gail received the Northbrook "property," which we interpret as the Northbrook home 
and
 the lot, as a gift from her father.  However, "it is elementary property law that a quitclaim deed will convey whatever title or interest the grantor may have in the land at the time it is given 
and only such title and interest
."  (Emphasis added.)  
Cree Development Corp. v. Mid-America Advertising Co.
, 294 Ill. App. 3d 324, 332 (1997).  We have already determined that at the time the quitclaim deed was executed, Gail held title to the Northbrook home as her personal property.  Her father's sole remaining title and interest was in the land itself.  Therefore, the quitclaim deed was only effective to transfer title to the land and not to the house.  One cannot quitclaim a title one does not possess.  The current state of title is that Gail owns the house as personal property, and the Parkway Bank and Trust Company holds title to the land upon which it rests in a land trust, with Gail as owner of 100% of the beneficial interest.
(footnote: 2)  We therefore hold that because Gail's father never held title to the house, the trial court's finding of gift and classification of the house as Gail's nonmarital property on this basis was against the manifest weight of the evidence.           

One of the elements of a gift is that the transfer must be 
gratuitous
.  
Agazim
, 147 Ill. App. 3d at 648-49.  The record is quite clear that the lot was 
not
 a gift.  The record contains Gail's own testimony that she purchased the lot from her father, a closing statement indicating a purchase price of $29,870 and Illinois and Cook County real estate transfer declarations to that effect.  Because both the house and the lot were acquired by Gail after the date of marriage but before the entry of judgment of dissolution, they were presumptively marital property.  750 ILCS 5/503(b) (West 1998).  In order to establish that the house and the lot were her nonmarital property, it was Gail's burden at trial to show by clear and convincing evidence that the funds used to construct the house and purchase the lot were obtained exclusively by one of the methods set forth in the Dissolution Act.  
In re Marriage of Hegge
, 285 Ill. App. 3d 138, 142 (1996); 750 ILCS 5/503(a) (West 1998).  Despite Gail's testimony that she both constructed the Northbrook home and purchased the lot with funds obtained from the sale of her nonmarital condominium, the record contains neither testimony nor documentary evidence tracing those funds.  This court has previously held that "[t]racing requires that the source of the funds be identified."  
In re Marriage of Davis
, 215 Ill. App. 3d 763, 770 (1991).  In drafting the Dissolution Act, the legislature strongly favored the presumption of marital property, setting a high evidentiary hurdle for litigants attempting to overcome the presumption.  See 
In re Marriage of Parr
, 103 Ill. App. 3d 199, 205 (1981) (stating that the Dissolution Act has "an express preference for the classification of property as marital property").  We do not hold that a party's testimony  may never rise to the level of clear and convincing evidence on the issue of tracing.  See 
In re Marriage of Henke
, 313 Ill. App. 3d 159, 168 (2000) (holding that wife's testimony regarding outstanding balance of mortgage entered into by herself and her husband for cost of construction of building on husband's nonmarital farm was sufficiently clear and convincing to trace the contribution of the marital estate and entitled the marital estate to reimbursement).  We determine only that under the circumstances before us, the bare assertion of a nonmarital 
source
 of a particular sum of money, without supporting documentary evidence such as account records, deposit slips, canceled checks, 
etc
., cannot be deemed clear and convincing.  
Henke
, 313 Ill. App. 3d at 167;  
In re Marriage of Kerman
, 253 Ill. App. 3d 492, 500 (1993);
 In re Marriage of Phillips
, 229 Ill. App. 3d 809, 821 (1992);
 In re Marriage of Guntren
, 141 Ill. App. 3d 1, 6 (1986);
 In re Marriage of Scott
, 85 Ill. App. 3d 773, 777 (1980).  Gail failed to carry her burden in this respect at trial.

We have held that "[i]n an Illinois land trust, legal and equitable title to real property is held by the trustee and the interest of the beneficiary is personal property."
 
 In re Estate of Mendelson
, 298 Ill. App. 3d 1, 3 (1998);
 
765 ILCS 430/1 (West 1994) 
.  As with any personal property, this beneficial interest may be classified as either marital or nonmarital property and is subject to equitable distribution upon dissolution of marriage.  750 ILCS 5/503 (d) (West 1998); 
In re Marriage of Frazier
, 125 Ill. App. 3d 473, 477-78 (1984).  Because Gail failed to
 
adequately trace the funds used to purchase the lot to a nonmarital source, the beneficial interest she acquired upon transfer of the lot into a land trust is properly classified as a marital asset and is subject to equitable distribution.

We therefore hold that under these circumstances, the trial court's classification of the "property at 4131 Terri-Lyn Lane" in Northbrook as Gail's nonmarital property was against the manifest weight of the evidence. 

We next address the trial court's classification of Gail's corporate interests as her nonmarital property.   Martin stipulated that Gail's North Pier Terminal, Ltd., stock was her nonmarital property.  Martin also does not contest the classification of Gail's 20% interest in the Adreani Farms partnership as nonmarital as Gail acquired this interest two years prior to the parties' marriage.  Even though Gail acquired her 20% interest in the Adreani Buildings partnership during the marriage, Martin concedes that this interest is Gail's nonmarital property based on a gift letter from her father.  Martin argues however that Gail failed to prove that she acquired her remaining business interests in Norridge Development Corp., Courts of Amber Woods, Inc., Norwood Builders, Inc., and Norwood Plaza, Inc., as nonmarital gifts from her father.

In support of this assertion, Martin points to the finding of the trial court that Gail's father, Raymond Adreani, engaged in a "pattern of endowment" of portions of his business interests to his children.  Applying the rule of conflicting presumptions discussed above, Martin correctly states that it was Gail's burden at trial to prove by the manifest weight of the evidence that the elements of a gift with respect to these interests were met.  
Hagshenas
, 234 Ill. App. 3d at 186-87.  "A valid gift requires proof of donative intent and delivery of subject matter."  
In re Marriage of Schmidt
, 242 Ill. App. 3d 961, 968 (1993).  Martin challenges the sufficiency of Gail's proof of her father's donative intent on the grounds that Raymond did not testify as to his intent at trial.  

At trial, Gail testified that the contested business interests were gifts from her father.  Martin offered no testimony to the contrary.  Susan Smith and Bruce Adreani, Gail's sister and brother, both testified that Gail's business interests were gifts from their father and that all five of the Adreani children had each received identical gifts.  Also before the trial court was the parties' stipulation that the individual transfers of the North Pier Terminal, Ltd., stock to Gail and Martin, respectively, were "gift[s] from Gail's family."  As shown by the stock certificates in the record, all of the other stock transfers were to Gail alone.  Although we agree with the statement that the "evidence 
most
 relevant in determining donative intent is the donor's own testimony" (emphasis added) (
In re Marriage of Simmons
, 221 Ill. App. 3d 89, 92 (1991)), we cannot say that such testimony is the 
only
 relevant evidence of donative intent.  The trial court heard testimony on this issue from Gail and her siblings and was able to examine the form of the transfer of the North Pier Terminal, Ltd., stock in comparison with that of the other business interests.  The trial court found that the witnesses' testimony was sufficiently credible and persuasive, that the evidence supported the existence of a "pattern of endowment" on the part of Gail's father over the course of more than 23 years and that this "pattern of endowment" was sufficient to establish his donative intent with respect to the business interests at issue.  After a careful review of the record, we cannot say that this finding was against the manifest weight of the evidence.     

Finally, Martin challenges the trial court's classification of the following investment accounts as Gail's nonmarital property:

Name
 
 Amount
 

ABN-AMRO Account $ 211,588.00 

LaSalle Nat'l Bank Money Market Account $ 249,246.00

LaSalle Nat'l Bank Money Market Account $     5,366.00

LaSalle Nat'l Bank Checking Account 
$   25,546.00

TOTAL: $ 491,746.00. 

The trial court found that these accounts were established with income from Gail's nonmarital businesses and awarded them to Gail.  Martin challenges this finding, claiming that Gail failed to trace the funds in these accounts by clear and convincing evidence from time of receipt through trial, and thereby failed to overcome the presumption of marital property.  Based on Gail's failure to overcome the presumption of marital property, Martin argues that these accounts should therefore have been classified marital property by default under section 503(b) of the Dissolution Act.  750 ILCS 5/503(b) (West 1998).  Gail did not respond to this argument in her briefs.  As authority for his position, Martin cites the previous decision of this court in 
In re Marriage of Jelinek
, 244 Ill. App. 3d 496 (1993).  In 
Jelinek, 
we dealt with the issue of tracing the acquisition of certain stocks by the husband during the marriage. 
 Jelinek, 
244 Ill. App. 3d at 504-06.
 
 We determined that because the husband received these stocks in a manner analogous to the issuance of a stock split or dividend (as a replacement of diminished 
premarital
 equity in a corporation), the newly acquired stocks were also the husband's nonmarital property.  
Jelinek, 
244 Ill. App. 3d at 505.  Apart from the general statement that "[t]racing of funds is a procedure which allows the court to find that property which would otherwise fall within the definition of marital property is actually nonmarital property under one of the statutory exceptions" (
Jelinek, 
244 Ill. App. 3d at 504), this case is not instructive with respect to the issue before us.  Tracing the acquisition of numbered stocks is a very different proposition from tracing the flow of cash.  

As with the properties considered earlier in this opinion, our review of the trial court's classification of these accounts as Gail's nonmarital property is limited to whether this determination was contrary to the manifest weight of the evidence.  
In re Marriage of Gurda
, 304 Ill. App. 3d 1019, 1023-24 (1999).  The evidence before the trial court with respect to these accounts consisted of Gail's testimony as to the nonmarital source of the funds and a single monthly balance statement (the statements) for each of the accounts beginning at approximately the time trial commenced.  Although Martin offered no evidence to dispute Gail's assertion that the accounts were her nonmarital property, 
it was not his burden to do so.
  Illinois case law holds that the party seeking the benefit of a section 503(a) exception to the presumption of marital property in section 503(b) of the Dissolution Act bears the burden of proof.  
In re Marriage of Hegge
, 285 Ill. App. 3d 138, 142 (1996).  In order to meet her burden of proof, Gail was required to trace the asserted nonmarital source of the funds in the accounts by clear, convincing and affirmative evidence -- that is, to differentiate among otherwise fungible dollars X, Y and Z.  
Hegge
, 285 Ill. App. 3d at 143; 
In re Marriage of Snow
, 277 Ill. App. 3d 642, 650-51 (1996); 
In re Marriage of Amato
, 80 Ill. App. 3d 395, 399 (1980).  While the balance statements provided the trial court with a recent balance for each of the accounts, they clearly failed to satisfy the tracing requirement of affirmatively identifying the 
source
 of the funds.  
In re Marriage of Davis
, 215 Ill. App. 3d 763, 770 (1991).  After a careful review of the record, we find that Gail failed to meet her burden of clear and convincing evidence as to the nonmarital source of the funds in these accounts.  We therefore hold that the trial court's classification of these accounts as Gail's nonmarital property was against the manifest weight of the evidence. 

II.  "Loan" to ITI

On cross-appeal, Gail challenges the trial court's finding that the sum of $231,500 that she transferred to ITI between 1992 and 1995 was a gift to the marital estate (from which she was not entitled to repayment) rather than a loan.   "[P]roperty designated as nonmarital pursuant to the exceptions in section 503(a) may still be presumptively transmuted into marital property by the affirmative act of the contributing spouse.  The transmutation doctrine is based on the presumption that the contributing spouse intended to make a gift of the property to the marital estate."  
In re Marriage of Riech
, 208 Ill. App. 3d 301, 311 (1991).  "The presumption of a gift transforming the property into marital property may be rebutted by clear and convincing evidence that no gift was intended."  
Riech
, 208 Ill. App. 3d at 311.  We believe that the trial court was correct in its finding that Gail failed to rebut the presumption that her transfer of funds to ITI was a gift to the marital estate.  The record of Gail's subsequent conduct with respect to the transfer supports the trial court's finding of gift.  Although Gail testified that she considered the transfer of funds a loan, there was conflicting testimony as to whether she had ever discussed with Martin the matter of repayment.  Gail requested no security whatsoever for the transfer.  Although she denied familiarity with corporate formalities with respect to loans, Gail sat on the board of directors of several corporations.  ITI neither authorized nor executed a promissory note for the stated amount.  The funds were carried on the corporate books as a "loan from shareholder," and the parties stipulated that Martin was the sole shareholder.  As an employee of ITI, with full access to the corporate accounts and with full check-writing authority, Gail neither authorized nor issued herself any checks in repayment.  No demands for repayment were made until the commencement of the dissolution proceedings.  In light of the record, we cannot say that the trial court's classification of the funds that Gail transferred to ITI as a gift to the marital estate rather than a loan was against the manifest weight of the evidence. 

III.  Maintenance and Child Support

On direct appeal, Martin challenges the amount of the trial court's award of maintenance from Gail as insufficient.  On cross-appeal, Gail challenges the maintenance award as excessive and an abuse of discretion.  Gail further argues on cross-appeal that the trial court abused its discretion in relieving Martin of any child support obligations.  In light of our disposition of the property questions in this case, we need not address these issues on appeal.  See 
In re Marriage of Guerra
, 153 Ill. App. 3d 550, 559 (1987); 
In re Marriage of Rosen
, 126 Ill. App. 3d 766, 778 (1984) (holding that because the issues of maintenance and child support depend so heavily upon the apportionment of marital property, a remand for reapportionment of marital property requires that the trial court readdress those issues).

IV.  Conclusion

We reverse the finding of the trial court that the "property at 4131 Terri-Lyn Lane" is Gail's nonmarital property; we affirm the trial court's classification of Gail's business interests as her nonmarital property; we reverse the trial court's finding that the investment accounts are Gail's nonmarital property, and we affirm the finding of the trial court that the funds that Gail transferred to ITI were a gift to the marital estate rather than a loan and thus not subject to reimbursement.  In light of the amount of marital property now subject to equitable distribution, we further direct the trial court to reconsider the issues of maintenance and child support in accordance with the appropriate provisions of the Dissolution Act.  750 ILCS 5/504, 505 (West 1998).  

For the foregoing reasons, we affirm in part, reverse in part and remand the cause for further proceedings consistent with the views expressed in this opinion.  

Affirmed in part and reversed in part; cause remanded.

McNulty, P.J., concurs.

Tully, J., dissents.

JUSTICE TULLY, dissenting:

I respectfully dissent with the majority. The conclusion that the majority reaches regarding the Northbrook home, declaring it to be marital property is just plain wrong. Gail Didier, petitioner-appellee, in noncontradicted testimony stated that funds from Gail's nonmarital condominium property were used to purchase the Northbrook home. The trial court's finding that the Northbrook home is Gail's nonmarital property is not an abuse of discretion, and the trial court's conclusion is fair and reasonable and should be affirmed.

Further, in this instance, the property was kept separate and apart from marital property and held in a land trust with Gil being the sole beneficial owner of the trust. Section 503(a)(2) indicates when property is acquired in exchange for property acquired before the marriage, the property is to be known or classified as nonmarital property. Property acquired during marriage in exchange for nonmarital property is also considered nonmarital, especially if the new property is held in the acquiring spouse's name alone. 
In re Marriage of Smith
, 86 Ill. 2d 518 (1981); 750 ILCS 5/503(a)(2) (West 1998). I would find that there was clear and convincing evidence that this property has been held as nonmarital property, has been viewed and treated an nonmarital property, and that all expenses, including taxes, have been paid by the petitioner. As to the items of investments, such as the following accounts: ABN-AMRO, La\tSalle National Bank money market account, and La\tSalle National Bank checking account, totaling $491,746.00, I agree with the majority as to the classification of the investments that the majority finds as marital property due to failure of sufficient evidence. To differentiate this from the general concept of property acquired during the marriage as marital property would require a showing by testimony of the donor, her father, or some other evidence more than her bare statement. It appears that the trial court's finding of Gail's business investments as nonmarital property is against the manifest weight of ht evidence. I concur with the majority. As to the issue of maintenance and child support, I agree with the majority.

FOOTNOTES
1:  We decline to follow the rule set forth in the recent Second District case of 
In re Marriage of Blunda
, 299 Ill. App. 3d 855 (1998), in which the court held, in reference to a gift during the marriage, that "it [was] the burden of the party 
challenging
 the gift to present evidence that the parent making the transfer lacked donative intent."  (Emphasis added.) 
 Blunda
, 299 Ill. App. 3d at 866.  This ruling fails to consider the effect of the conflicting presumptions of marital property and gift (as set forth in the earlier Second District case of 
Hagshenas
, 234 Ill. App. 3d at 186-87), which is to negate the otherwise presumed donative intent of the parent, and reverses the burden of proof.  We believe that the better approach in circumstances involving these conflicting presumptions is to require the 
proponent
, as
 
the party claiming that property is nonmarital,
 to prove the elements of gift by the manifest weight of the evidence.  750 ILCS 5/503(b) (West1998); 
Hegge
, 285 Ill. App. 3d at 141-42.

2: The parties' stipulation that title to the 
house
 is held under the land trust is irrelevant.  A stipulation cannot cure the faulty transfer of title from a settlor to a trustee.  Without the proper delivery of title to the trustee under the land trust, Adreani failed to satisfy the required elements of an express trust with respect to the house.  
Kurtz v. Solomon
, 275 Ill. App. 3d 643, 649 (1995).