LILLIAN TOOTHAKER, Plaintiff-Appellee, *v.* VERNON A. JEFFERSON,
Defendant-Appellant.

Second District (2nd Division)　No. 74-423

Opinion filed March 23, 1976.

Heise & Coolahan, of Wheaton, for appellant.

Allen Landmeier, of Smith & McCracken, of Geneva, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

This is an appeal from the judgment of the circuit court of Kane County awarding the plaintiff a money judgment for $7800 on Count 1 of her complaint and reserving judgment on Counts 2 and 3. Count 1 was for moneys had and received by the defendant as loans from the plaintiff amounting to some $9485 over a period from January, 1970, to late August, 1971. Count 2 was a count in declaratory judgment asking the court to decree that the plaintiff has an equitable lien on certain real estate owned by the defendant, and Count 3 is similar to Count 2 except that it seeks to impress a trust on the said real estate in favor of the plaintiff.

The plaintiff is a retired school teacher and was in her 70th year when she met the defendant, a black man, who at that time was approximately 50 years old. They were both teachers at St. Charles Training School; she an English teacher and defendant a teacher of barbering.

The plaintiff and defendant began seeing each other outside of school late in 1969 and from the testimony it appears that she stayed overnight at his residence in Chicago on several occasions. It further appears that at

various times she gave the defendant money in the form of checks, payable to him. After some months defendant claims the plaintiff suggested that he try to find a house closer to St. Charles than his Chicago home. Plaintiff claims this was not at her suggestion, but agrees that she went "house hunting" with him and after some searching they found a house in Batavia which seemed suitable for a combined residence and a barbershop. Defendant claims plaintiff gave him $4500 for a down payment on the house and soon after another $500—$5000 in all—so that he could secure a mortgage and purchase the house. Plaintiff claims that he requested that she loan him the amount of the down payment, which she did. After he bought the house it appears that on occasion she spent weekends there with him. Subsequently, at various times during 1970 and 1971, it appears the plaintiff gave the defendant additional sums by way of checks, some of them being for clothing or furniture and other miscellaneous purposes and other sums being for specific purposes such as house repairs, repayment of a loan from defendant's credit union, to pay a debt defendant owed to the IRS and to pay a debt defendant owed on furniture. The plaintiff kept track of all the checks she issued, which totaled about $9500 from January, 1970, through August, 1971. Defendant claims all of these amounts were gifts—plaintiff claims they were specifically requested loans.

Early in 1972 the relationship cooled and on March 29, 1972, the defendant wrote the plaintiff from California telling her he was through with her. This followed her refusal to send him some more money which he said he needed for repairs to his mother's house. The plaintiff saw the defendant briefly one more time in 1972 but there was no resumption of their relationship. In February, 1973, the plaintiff filed the present suit.

The trial court in a bench trial, found that $7800 of the total amount the defendant received was loans, not gifts, and he entered judgment for the plaintiff for that amount.

In this appeal the defendant argues that the court's judgment is against the manifest weight of the evidence. He argues that there was nothing in writing to indicate a loan was intended rather than a gift and that the amounts were given to him under circumstances which are in accord with the idea of a gift and not compatible with the intention to make a loan. The defendant points out that the relationship was not on an even basis of attraction—he being some 20 years younger—and there was nothing said about repayment when she gave him the checks. Therefore, the logical inference is that the sums in question were merely gifts incidental to their relationship. The defendant contends that the purchase of the house was for plaintiff's convenience since she lived in Geneva and wanted to avoid the necessity of visiting him in an undesirable neighborhood in Chicago. He points out that at the time they were negotiating for the purchase of

the house the plaintiff told the real estate agent she would have no interest in the house and at the time the mortgage was negotiated she told the loan officer, in answer to his direct question, that there would be no secondary financing, implying thereby that the $5000 payment was not a loan to be repaid.

In her testimony the plaintiff denied that she wanted the defendant to buy the house for her convenience, rather than his, and she explained her answers to the real estate agent and the loan officer—that is, that she had no interest in the house and that there was no loan involved other than the mortgage—on the grounds of propriety since they were not married and he was black and she was white.

A witness who had known both of them for several years prior to the suit testified that on one occasion when he visited the defendant's barbershop in Batavia the defendant mentioned to him that the plaintiff had lent him the money for the down payment on the house.

The sole issue presented for the trial court's determination thus was the intention and understanding of the parties at the time the checks were given to the defendant—did the plaintiff intend a gift or a loan and did the defendant accept the checks as a gift or as a loan? This is a difficult question to resolve since the plaintiff's intention and the defendant's understanding are subjective in nature and the parties being in conflict only the limited evidence afforded by witnesses and the logic of the situation as adduced from common experience are useful in guiding the trier of fact. The trial judge reached the conclusion that a number of the checks in question were intended as gifts. However, as to the checks for the house down payment; for the repayment of defendant's credit union loan; for the payment of the amount defenant owed to IRS; for payment for certain house repairs on his mother's house, and for the payment of a debt owed on furniture purchased for defendant's former wife, all of which amounted to $7800, the court reached a different conclusion. The court concluded that as to these, the circumstances were such as to give credibility to the plaintiff's contention that these sums were loans and he gave judgment accordingly.

In this appeal, we are not required to evaluate again all the facts bearing on the ultimate issue of loan versus gift. The trial court heard and observed the parties and their witnesses and reached the decision after weighing the facts—as indicated by his remarks in giving his decision. If we do not find that his judgment was contrary to the manifest weight of the evidence, the judgment must be affirmed.

None of the Illinois cases cited by either party are sufficiently similar in their facts to be determinative of the issues, but from them and other cases we can derive two general principles which help in deciding this appeal: (1) except as between parent and child the law never presumes a

gift and therefore the burden is on the person asserting a gift to prove it (*Dudley v. Uptown National Bank,* 25 Ill. App. 2d 514; *In re Estate of Ray,* 7 Ill. App. 3d 433); and (2) the judgment of the trial court as to its specific findings of fact (in this case that certain of the transactions in question were loans rather than gifts) will not be disturbed unless clearly contrary to the manifest weight of the evidence. *Cuellar v. Cope,* 17 Ill. App. 3d 743; *Schneider v. Jackson,* 8 Ill. App. 3d 348; *In re Estate of Vardalos,* 24 Ill. App. 3d 520.

While the age difference in this case might give some credence to the defendant's contention that the plaintiff made gifts to him as an inducement to continue an otherwise disadvantageous relationship and while this explanation finds some confirmation in common experience, as to the smaller amounts, the larger checks, given for a specific purpose are more credible as loans than as gifts. A loan is implied, rather than a gift, where the person getting the money initiates the transaction. Here there was evidence that the defendant had informed the plaintiff of his debt to the credit union and that he was paying interest at 1% per month. The plaintiff testified she offered to lend him the $1000 to pay this debt off so that he could save considerable interest by repaying her at the rate of 5% per year instead of repaying the credit union 1% per month which would amount to 12% per year. This is entirely credible as a loan transaction. The Internal Revenue Service debt likewise is not something that plaintiff would have known about except that the defendant told her. Again, the logical inference is as plaintiff testified that he solicited help in this regard and that it was intended as a loan requested by the defendant for a specific purpose.

While the plaintiff undoubtedly felt a great deal of affection toward the defendant, it does not necessarily follow that she would make a gift of $750 to pay off a debt to the IRS for tax on income which was probably earned and spent before the relationship ever began. There seems little glamour in that and it is logical to suppose that as plaintiff testified this sum was solicited as a loan since the debt would hardly have been within the knowledge of the plaintiff except for such solicitation. The check for $200 was for repairs to defendant's mother's house in California and according to the plaintiff—whose testimony was not disputed on this point—the amount was solicited by defendant. Considering the purpose for which it was solicited, a loan rather than a gift seems a reasonable interpretation. The $850 items stands in much the same case. The plaintiff testified it was to pay a debt for furniture the defendant bought during a previous marriage and which he apparently owed as part of a divorce decree. The plaintiff testified that defendant solicited this amount suddenly, late one night, and it was more or less an emergency situation. These circumstances certainly do not suggest a freely given gift

and the judge's finding that the amount given under such circumstances was a loan, not a gift, is certainly not against the manifest weight of the evidence where the contrary evidence is simply the defendant's statement that it was not a loan.

As to the house down payment, the plaintiff explains her statements to the real estate agent (that she would not have any interest in the house) and to the loan officer (that there was no secondary financing securing the amount of the down payment) by stating that such statements were made to preserve an appearance of propriety, the parties being in the difficult position of being unmarried and being of different races. Additionally, a witness who was a friend and customer of the defendant, testified that the defendant told him the plaintiff had lent him the money for the down payment on the Batavia house. Certainly the manifest weight of the evidence is not contrary to such a finding.

As did the trial court, we view the larger amounts given for a specific purpose at the defendant's solicitation, in a different light from the smaller checks given for miscellaneous purposes which the plaintiff did not always remember. The context in which the larger sums were given suggests more than an impulsive gift in spite of the lack of any formal acknowledgement of obligation by the defendant.

Where the trial judge finds from all the evidence that a gift did not in fact occur, the findings will not be disturbed on appeal unless the record as a whole clearly shows to the contrary. (*Schneider v. Jackson,* 8 Ill. App. 3d 348; *Cuellar v. Cope,* 17 Ill. App. 3d 743, 744.) We find that there is sufficient basis for the trial court's judgment to make it definitely not against the manifest weight of the evidence.

The judgment of the circuit court of Kane County is affirmed.

Judgment affirmed.

T. J. MORAN, P.J., and DIXON, J., concur.