NOTICE

Decision filed 09/16/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240481-U

NO. 5-24-0481

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| TONI BROOKE SAWYER, | ) | Coles County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 22-DN-76 |
| | ) | |
| SHAWN AARON SAWYER, | ) | Honorable |
| | ) | Mark E. Bovard, |
| Respondent-Appellant. | ) | Judge, presiding. |

---

JUSTICE SHOLAR delivered the judgment of the court.
Presiding Justice McHaney concurred in the judgment.
Justice Vaughan concurred in part and dissented in part.

**ORDER**

¶ 1    *Held*:   The circuit court's judgment for dissolution of marriage is affirmed where the court properly found that the properties were marital property, payments made from Toni to Shawn were a loan rather than a gift, and Toni properly testified about the value of the properties based on her opinion of the value of the properties by virtue of ownership, original price paid, and improvements made to the properties.

¶ 2    Petitioner, Toni Sawyer, filed a petition for dissolution of marriage in September of 2022. The Coles County circuit court entered a judgment of dissolution of marriage on October 16, 2023. The court determined that several properties acquired during the marriage were marital property. The court also determined that payments made by Toni to respondent's ex-wife were a loan, not a gift. Respondent, Shawn Sawyer, appealed. On appeal, he argues that the circuit court erred in its

1

division of marital and nonmarital property. Specifically, Shawn contends that the circuit court erred by: (1) allowing lay opinion testimony from Toni regarding the value of real estate, (2) determining that Toni made a loan to the nonmarital estate of Shawn, and (3) ordering payment from Shawn to Toni. Toni disagrees, arguing that the court properly found that the properties were marital property, that the court properly found that her payments were a loan rather than a gift, and that a proper foundation was laid as to her lay witness testimony regarding values of the properties. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Shawn was previously married to Jennifer Sawyer. During that marriage, Jennifer and Shawn purchased 10356 E. CR 300 N, 407 Main Street, 305 5th Street, Lot PIN # 11-0-01861-002, and two parcels in Fayette County. Shawn and Jennifer divorced, and Jennifer filed for Chapter 7 bankruptcy. Shawn filed for Chapter 11 bankruptcy.

¶ 5      Toni and Shawn entered into a civil union on October 10, 2018. They were subsequently married on July 13, 2019. Toni filed a petition for dissolution of marriage on September 28, 2022.

¶ 6      Following Toni's petition for dissolution of marriage, the parties proceeded to trial on July 28, 2023. The evidence at trial established that as part of Jennifer and Shawn's marital settlement agreement, Jennifer agreed to transfer the above-noted properties to Shawn via quitclaim deed if Shawn paid $29,500 to Jennifer's bankruptcy trustee. Toni and Shawn agreed that Toni would use nonmarital funds to pay the bankruptcy trustee. Shawn would repay Toni by depositing funds back into her savings account. Toni wrote four checks directly to Jennifer's bankruptcy trustee totaling $29,500.

¶ 7      Upon Toni paying the trustee, Jennifer quitclaimed her interests in the properties to Shawn. The transactions occurred in November 2021, during Toni and Shawn's marriage. Additionally,

2

during the marriage, Shawn and Toni purchased 408 College Street, 409 Main Street, and Lot PIN # 11-0-02080-000.

¶ 8 Toni testified about her personal knowledge of the properties and improvements made to them. First, as to 408 College Street and 409 Main Street, Toni testified that she considered the purchase prices and previous appraisals and consulted with a realtor to form her opinions as to their values. As to 407 Main Street, 305 5th Street, Lot PIN #11-0-01861-002, and the two Fayette County parcels, Toni considered her own personal knowledge of the properties, information provided on the county tax assessors' websites, and Shawn's interrogatory responses regarding some of the properties. To form her opinion as to the value of 10356 E. CR 300 N, Toni considered her own personal knowledge of the property and improvements, the loan amount, and reviewed similar nearby properties on Zillow. Toni testified that during the course of their marriage, Shawn acquired interest in property pursuant to quitclaim deeds from Jennifer.

¶ 9 Toni testified, and the exhibits in the record demonstrates, that Jennifer quitclaim deeded the property at 407 Main Street on November 4, 2021, and the deed was recorded on November 9, 2021. Toni testified that the deed transferring Jennifer's interest to Shawn took place during the course of the marriage. On November 9, 2021, a quitclaim deed from Jennifer to Shawn was recorded on property at 10356 East County Road 300 North in Lerna. On November 9, 2021, a quitclaim deed was recorded from Jennifer to Shawn on the property at 305 5th Street. Finally, on November 9, 2021, a quitclaim deed was recorded from Jennifer to Shawn on an "empty lot" in Lerna, Illinois, which was used to park semi-trailers. As to the two parcels of land in Fayette County, the properties were transferred via quitclaim deed from Jennifer to Shawn on November 4, 2021, and recorded on November 9, 2021. The evidence demonstrates that all of the quitclaim deeds took place during the course of Toni and Shawn's marriage.

3

¶ 10    On October 16, 2023, the circuit court entered a judgment of dissolution of marriage. Relevant to this appeal, in its written order, the court first considered Toni's payment of $29,500. The court noted that the evidence showed that Shawn and Jennifer filed for bankruptcy before Toni and Shawn were married. The court noted that Toni testified that Shawn asked her to pay Jennifer's bankruptcy attorney $29,500, so that he would not lose ownership of the real estate he owned with Jennifer. Toni testified that this was a loan, and Shawn would deposit repayment monies back into her personal savings account. The court noted that Toni "specifically testified that it was not a gift."

¶ 11    Turning to the alleged loan payments, the circuit court explained that the evidence demonstrated that Toni made four payments directly to Jennifer's trustee, totaling $29,500. The court determined that the payment of $29,500 from Toni's nonmarital funds was not a gift but rather a loan. The court noted that the evidence showed that the nonmarital monies were for Jennifer's bankruptcy in order to preserve Shawn's interest in the properties. The money was paid directly to the trustee, and not to Shawn. Toni identified the payments through exhibits. As such, the court determined that Toni was entitled to reimbursement of the money from the marital estate.

¶ 12    Next, the circuit court considered each of the real estate parcels in dispute. First, the court considered 103657 CR 300 N, Lerna, Illinois. The court determined that the property was first acquired by Shawn and his then-wife Jennifer in 2014. The property went into foreclosure, and both Shawn and Jennifer filed bankruptcy. Toni moved to the property in March 2019, and it served as the marital residence. The court noted that Toni testified that she agreed to loan Shawn $29,500 by directly paying the trustee of the property in order to keep Shawn from losing the home. Toni made four payments directly to the trustee.

4

¶ 13    The circuit court's order noted that Toni made the monthly mortgage payment on the property, which included escrow for insurance and taxes. The evidence demonstrated that both parties made financial and "sweat equity" contributions, however, Toni made "more substantial" contributions to the home. The court also noted that on November 9, 2021, Jennifer quitclaimed her interest in the property to Shawn.

¶ 14    The circuit court determined that the property was marital property. The court acknowledged that Toni's name was not on the deed, however, the evidence showed that she paid the mortgage and contributed both money and labor into home improvements. The court determined that at the time of Shawn and Toni's union, the "property essentially had zero net value," however, following Toni's "contribution and regular mortgage payments, the property now realizes significant equity." The court awarded the property to Shawn; however, the court ruled that Toni should be paid $29,500 for repayment of money paid to the bankruptcy trustee. The remaining equity was ordered split equally between the parties.

¶ 15    The circuit court's order specifically noted that there was testimony that the property value was $180,000. A Zillow online valuation was offered. The court expressly noted that it rejected the Zillow valuation, because it constituted hearsay and was not subject to cross-examination. Nonetheless, the court concluded that the property value of $180,000 was reasonable based on the purchase price, remodeling and upgrades, and the increase in the price of housing in Coles County.

¶ 16    Turning to 408 College, Lerna, Illinois, the court noted that the parcel was purchased during the marriage with the prospect of being a rental property. The court classified the property as marital property. The court awarded the property, valued at $35,000, to Toni. Similarly, the parcel at 409 Main Street, Lerna, Illinois, was purchased during the marriage and was classified as marital property. The court awarded the property, valued at $25,000, to Shawn.

¶ 17    The circuit court next considered Parcel # 11-0-0101861-002, a lot used to store semis. The court noted that Shawn and Jennifer acquired the property in 2015, and it was a part of the bankruptcy and divorce proceedings. Toni's name was not placed on the deed, and Jennifer deeded her interest in the property only to Shawn. The court noted that the "property had no net value to either party at the time of the civil union or marriage" and "it was only after those events that the parties realized any equity in the property." Therefore, the court found the value of the parcel may be allocated between the parties as marital property. The property was valued at $10,000 and awarded to Shawn.

¶ 18    Turning to 407 Main Street in Lerna, Illinois, Shawn acquired the property with Jennifer. The property was part of the bankruptcy and divorce proceedings between Shawn and Jennifer. The court noted that there was no evidence that Toni's name was placed on the deed, and Jennifer deeded her interest only to Shawn. However, the court noted that "this property had no net value to either party at the time of the civil union or marriage." Moreover, the court found that marital funds were used to improve the property, and "only after those events that the parties realized any equity in the property." Therefore, the court determined that the asset may be allocated between the parties as marital property. The property was awarded to Shawn.

¶ 19    Next, the court considered 305 5th Street, in Lerna, Illinois. The property was acquired by Shawn and Jennifer and was part of their bankruptcy and divorce proceedings. The court noted that there was no evidence that Toni's name was placed on the deed to the property, and the property was deeded from Jennifer to only Shawn. The property had "no net value to either party at the time of the civil union or marriage." However, marital funds were used to improve the property and "it was only after those events that the parties realized any equity in the property."

The court determined that the value of the asset may be allocated between the parties as marital property. It was awarded to Shawn.

¶ 20    The court next considered Parcel #11-0-02080-000, which Shawn purchased on June 17, 2022. The court noted that although the parties were separated at this time, they were not yet divorced. Therefore, the property was classified as marital property. The property was awarded to Shawn.

¶ 21    Finally, the evidence demonstrated that Shawn and Jennifer acquired two Fayette County parcels in 2012. The property was subject to their bankruptcy and divorce proceedings. The court noted that there was no evidence that Toni's name was ever placed on the deed, and Jennifer deeded her interest only to Shawn. The court also concluded that it was unclear when the property was paid off, and what role Toni had in paying the property off. Nonetheless, the court concluded that "this property had no net value to either party at the time of the civil union of marriage" and "it was only after those events that the parties realized any equity in the property." Therefore, the court determined that the value of the asset may be allocated between the parties as marital property.

¶ 22    In summary, the circuit court awarded Shawn the property at 10365 CR 300, Lerna, subject to his payment of $45,750 to Toni. The property had $62,000 equity. The court ordered that Toni should be reimbursed for her $29,500 contribution from this equity. The remaining $32,500 in equity would be divided equally, which required Shawn to pay Toni $16,250 for her share.

¶ 23    Shawn was awarded 409 Main Street, valued at $25,000 and the lot with PIN # 11-0-0101861 valued at $10,000. In order to offset these two properties, Toni was awarded 408 College valued at $35,000. Shawn was awarded the remaining properties subject to him paying Toni one-third of the equity in each of these properties: 407 Main Street (1/3rd of equity of $20,500 =

7

$6,833.33); 305 5th Street (1/3rd of equity of $34,200 = $11,400); Lot PIN #11-02080-000 (1/3rd of equity of $5,600 = $1,866.66); and Fayette County parcels (1/3rd of equity of $55,000 = $18,333.33). The total reimbursement owed from Shawn to Toni for these properties was $38,433.32.

¶ 24    On November 15, 2023, Shawn moved to reconsider. Shawn first argued that the properties acquired during the marriage should not have been credited to the petitioner through equalization payment. He also argued that payments by Toni toward Shawn's bankruptcy should not have been treated as a loan. The court denied the motion by written order on March 5, 2024.

¶ 25    On April 3, 2024, Shawn timely appealed.

¶ 26                                    II. ANALYSIS

¶ 27    Shawn appeals, arguing that the circuit court erred in its division of marital and nonmarital property. Specifically, Shawn contends that the circuit court erred by: (1) determining that Toni made a loan to the nonmarital estate of Shawn, (2) determining that the properties at dispute were marital property, thereby ordering payment from Shawn to Toni, and (3) allowing lay opinion testimony from Toni regarding the value of real estate. Toni disagrees, arguing that the court properly found that the properties were marital property, that the court properly found that her payments were a loan rather than a gift, and that a proper foundation was laid as to her lay witness testimony regarding values of the properties. For the reasons that follow, we affirm. We consider each argument in turn.

¶ 28                                  A. Loan Payments

¶ 29    First, Shawn argues that the circuit court erred by determining that the $29,500 paid by Toni was a loan and not a gift. Toni responds, arguing that the court's finding that Toni's payments to Shawn's ex-wife Jennifer's bankruptcy trustee were a loan, not a gift, was not against the

8

manifest weight of the evidence because there was neither donative intent nor delivery of the subject matter. We agree with Toni.

¶ 30    Initially, we note that the dissent contends that neither the majority nor the trial court addresses the relevance of Shawn and Toni's relationship status at the time the payments were issued. However, Shawn himself fails to raise this as an issue on appeal.

¶ 31    First, Shawn fails to set forth a standard of review for this issue. Rather, Shawn merely sets forth a blanket standard of review for an abuse of discretion which seems to apply to all of the issues set forth in his appeal. In response, Toni argues that a manifest weight of the evidence standard applies, relying on *Toothaker v. Jefferson*, 36 Ill. App. 3d 993, 996 (1976). Next, Shawn sets forth merely one paragraph of argument and analysis on this issue. Shawn fails to clearly set forth the issue on appeal, and he fails to cite relevant case law to support his position. He merely contends that Toni bore the burden of proof to establish that the money was a loan. "A reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented." *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986). This court is "not a repository into which an appellant may foist the burden of argument and research." (Internal quotation marks omitted.) *Velocity Investments, LLC v. Alston*, 397 Ill. App. 3d 296, 297 (2010).

¶ 32    Nonetheless, under either standard, the evidence demonstrates that Shawn and Jennifer filed for bankruptcy before Toni and Shawn were married. Shawn hoped to maintain ownership of his personal and business real estate properties and recover them out of foreclosure. He therefore filed for bankruptcy. Toni testified that Shawn asked her to pay Jennifer's bankruptcy trustee $29,500, so that the real estate would remain with Shawn. Toni testified that the money was a loan,

and Shawn would deposit money back into her personal savings account. Toni testified that the money was not a gift.

¶ 33 The evidence showed that Toni made four payments directly to Jennifer's trustee, not to Shawn. The four payments totaled $29,500. Toni testified that the money came from back pay she earned prior to her relationship with Shawn, and from the sale of her nonmarital home. Toni provided the court with exhibits that showed the four payments made directly to the trustee.

¶ 34 For these reasons, the circuit court determined that the payment of $29,500 from Toni's nonmarital funds to the bankruptcy trustee was not a gift, but rather a loan. The evidence showed that the money was paid to preserve Shawn's interest in the properties. Based on the record before us, we cannot say that the court's determination was in error under either standard of review.

¶ 35                                     B. Classification of Properties

¶ 36 Second, Shawn argues that the court erred by awarding Toni credit for properties awarded to Shawn through his previously litigated divorce. Toni responds, arguing that the circuit court did not abuse its discretion by classifying certain properties as marital property subject to division, because all of the properties were acquired during the marriage. We find that the circuit court properly characterized the properties as marital property.

¶ 37 "The trial court's allocation of property is subject to an abuse of discretion standard of review." *In re Marriage of Berberet*, 2012 IL App (4th) 110749, ¶ 46. "An abuse of discretion occurs only where no reasonable person could take the view adopted by the trial court." *In re Marriage of Getautas*, 189 Ill. App. 3d 148, 153 (1989). Section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Act) provides that in a dissolution of marriage case, the circuit court "shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors ***." 750 ILCS 5/503(d) (West 2016). One such factor includes:

10

"(1) each party's contribution to the acquisition, preservation, or increase or decrease in value of the marital or non-marital property ***." *Id.* § 503(d)(1).

¶ 38    Section 503(b)(1) of the Act provides: "[A]ll property acquired by either spouse after the marriage and before a judgment of dissolution of marriage or declaration of invalidity of marriage, including non-marital property transferred into some form of co-ownership between the spouses, is presumed to be marital property ***." 750 ILCS 5/503(b)(1) (West 2004). The Act thus creates a rebuttable presumption that all property acquired after the date of the marriage is marital property regardless of the manner in which title is held. *In re Marriage of Didier*, 318 Ill. App. 3d 253, 258 (2000). It is the burden of the party claiming that property acquired during the marriage is nonmarital to prove by clear and convincing evidence that the property falls within one of the exceptions listed in section 503(a) of the Act. *In re Marriage of Wanstreet*, 364 Ill. App. 3d 729, 735 (2006); *Didier*, 318 Ill. App. 3d at 258.

¶ 39    The circuit court carefully considered the testimony and evidence related to each individual real estate parcel in dispute. The evidence showed that some of the properties were first acquired by Shawn and his then-wife Jennifer in 2014. During the course of the marriage between Toni and Shawn, Toni paid $29,500 directly to the bankruptcy trustee in order to preserve Shawn's interest in the properties. The properties were then quitclaim deeded to Shawn during the course of his marriage to Toni. Turning to the marital home, specifically, Toni made the monthly mortgage payment on the property. The evidence showed that Toni made significant contributions, both financial and in renovations, to the marital home. Other properties were purchased during the marriage between Toni and Shawn. Finally, all of the properties gained equity during the course of the marriage. Based on the record before us, we cannot say that the court abused its discretion by characterizing the properties as marital property.

11

¶ 40                                    C. Toni's Testimony

¶ 41    Finally, Shawn argues that the circuit court erred by admitting opinion testimony from Toni regarding the value of real estate. Toni responds, arguing a proper foundation was laid for Toni's lay witness testimony as to her opinion of the values of the properties. We find that the circuit court properly admitted Toni's testimony.

¶ 42    Valuation of a marital asset is a question of fact to be determined by the trial court. *In re Marriage of Tietz*, 238 Ill. App. 3d 965, 975 (1992). In order to determine the value of marital assets, the court must have before it competent evidence of value. *In re Marriage of Stone*, 155 Ill. App. 3d 62, 70 (1987). While there is no rule of law regarding what type of evidence constitutes "competent evidence" of value, the value of real estate is ordinarily proven through the testimony of expert witnesses who have conducted appraisals of the property. See, *e.g.*, *In re Marriage of Liszka*, 2016 IL App (3d) 150238, ¶ 69.

¶ 43    The owner of property is generally "qualified to express his opinion of the value of his property by virtue of ownership." *In re Marriage of Anderson*, 409 Ill. App. 3d 191, 206 (2011). This is because property ownership typically indicates knowledge of the original price paid for the property, taxes paid, improvements that have been made, and the current state of the property, such that the property owner "probably has a reasonably good idea of the current value." *In re Marriage of Vucic*, 216 Ill. App. 3d 692, 703 (1991). However, "[a] property owner may be shown to be incompetent to testify where it is affirmatively shown that special circumstances exist which indicate that he is unfamiliar with facts which give the property value." *Id.* The party opposing the property owner carries the burden of showing the existence of "special circumstances" (*In re Marriage of Thornton*, 89 Ill. App. 3d 1078, 1090 (1980)) and "may make this affirmative showing

12

on cross-examination, revealing the absence of probative value in the testimony" (*Vucic*, 216 Ill. App. 3d at 703).

¶ 44    Toni testified about her personal knowledge of the properties and the improvements made upon them. She also testified that she conducted research on Zillow regarding the value of other homes and properties in the area. Toni also testified about appraisals completed by previous owners. Toni testified that she consulted with a realtor to determine the value of the properties.

¶ 45    First, as to 408 College Street and 409 Main Street, Toni testified that she considered the purchase prices and previous appraisals and consulted with a realtor to form her opinions as to their values. As to 407 Main Street, 305 5th Street, Lot PIN #11-0-01861-002, and the two Fayette County parcels, Toni considered her own personal knowledge of the properties, information provided on the county tax assessors' websites, and Shawn's interrogatory responses regarding some of the properties. To form her opinion as to the value of 10356 E. CR 300 N, Toni considered her own personal knowledge of the property and improvements, the loan amount, and reviewed similar nearby properties on Zillow.

¶ 46    In its written order, the circuit court's order specifically noted that there was testimony as to the value of the marital home, valuing $180,000, and a Zillow online valuation was offered. The court expressly noted that it rejected the Zillow valuation, because it constituted hearsay and was not subject to cross-examination. Nonetheless, the court concluded that the property being worth $180,000 was reasonable based on the purchase price, remodeling and upgrades, and the increase in housing in Coles County.

¶ 47    Therefore, the circuit court properly considered testimony from Toni regarding the value of real estate, where Toni was qualified to express her opinion of the value of the properties by virtue of ownership, original price paid, and improvements made to the properties.

13

¶ 48                                    III. CONCLUSION

¶ 49    For these reasons, the judgment of the Coles County circuit court is affirmed.

¶ 50    Affirmed.

¶ 51    JUSTICE VAUGHAN, concurring in part and dissenting in part:

¶ 52    I concur with the majority's affirmation of the circuit court's reliance on Toni's lay testimony as to the value of certain parcels of real estate and the classifications that were actually made by the circuit court regarding marital and nonmarital assets. However, I respectfully dissent from my colleagues' affirmation of the circuit court's classification of the $29,500 payment from Toni to Jennifer's bankruptcy trustee as a loan, instead of a gift.

¶ 53    Citing, *Toothaker v. Jefferson*, 36 Ill. App. 3d 993, 996 (1976), the majority holds that the trial court's finding was not against the manifest weight of the evidence. While I agree with the standard of review, I disagree with the majority's ultimate conclusion. "A decision is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the court's findings are unreasonable, arbitrary, and not based on any of the evidence." *In re Marriage of Matchen*, 372 Ill. App. 3d 937, 946 (2007).

¶ 54    Here, three of the payments issued by Toni to the bankruptcy trustee were issued while the parties were in a civil union and the final payment was issued after Toni and Shawn were married. The Religious Freedom and Marriage Fairness Act (750 ILCS 80/1 *et seq.* (West 2018)) provides that "[a]ll laws of this State applicable to marriage, whether they derive from statute, administrative or court rule, policy, common law, or any other source of civil or criminal law, shall appeal equally to marriages of same-sex and different-sex couples and their children." *Id.* § 10(a).

¶ 55    Neither the majority nor the trial court addresses the relevance of Shawn and Toni's relationship status at the time the payments were issued when determining whether the payments were gifts or loans. In Illinois, "[t]he law presumes a gift if someone transfers property to his or her spouse or family member ***." *Barnes v. Michalski*, 399 Ill. App. 3d 254, 269 (2010) (citing *Grandon v. Amcore Trust Co.*, 225 Ill. App. 3d 630, 634 (1992)); *In re Marriage of Weiler*, 258 Ill. App. 3d 454, 462 (1994) ("In Illinois there exists a presumption of gift where a transfer of property is made from one spouse to another ***." (citing *Scanlon v. Scanlon*, 6 Ill. 2d 224, 231 (1955))). Toni and Shawn were entered in a civil union prior to the issuance of any of the payments and were married by the time the last payment was issued. As such, the parties were spouses when all four payments were issued and this court *must* presume that the payments made by Toni were gifts, not loans.

¶ 56    Indubitably, a presumption is not conclusive to the issue. *Scanlon*, 6 Ill. 2d at 231. Once the presumption of a gift arises, the burden of rebutting the presumption is on the party disputing the gift by presenting "clear, convincing, unequivocal, and unmistakable evidence." *Judgment Services Corp. v. Sullivan*, 321 Ill. App. 3d 151, 155 (2001). As Toni disputed that the $29,500 payments were gifts, her evidence must meet the standard set forth above.

¶ 57    The only evidence disputing the presumption of a gift was Toni's testimony claiming that the bankruptcy trustee payments were loans. Toni presented no physical evidence supporting her claim of a loan and admitted there was no written documentation related to the loan.[1] I find it equally relevant that Toni's testimony failed to provide any of the loan terms including an interest

---

[1]Although not raised by Shawn, the alleged loan is also contrary to the Frauds Act. See 740 ILCS 80/0.01 (West 2022). More specifically, section 1 of the Frauds Act requires the "promise or agreement" to be in writing, and "signed by the party to be charged therewith," if the action cannot be completed within one year. 740 ILCS 80/1 (West 2022). Toni's alleged loan was neither in writing nor completed within the requisite "space of one year" from the making of the alleged agreement.

rate or when any payment would be due. It is also notable that Toni never (1) filed a lien against the underlying real properties securing her interest related to the alleged loan with the county clerk, (2) requested an alternative form of security from Shawn related to the alleged loan, (3) requested Shawn execute a promissory note related to the alleged loan, or (4) demanded repayment of the $29,500 until after she filed her petition for dissolution against Shawn.

¶ 58     In addition to the lack of documentation regarding the alleged loan set forth above, while Toni's testimony seems to imply that the funds provided to the bankruptcy trustee were loaned to Shawn from her nonmarital property, she failed to address the rebuttable presumption that all property acquired by either spouse after the date of marriage but before the entry of a judgment of dissolution is marital property, regardless of how title is held. 750 ILCS 5/503(b) (West 2022). This is especially concerning where Toni's testimony revealed that although the payments were made from her bank account, on checks containing only her name, Shawn was a signatory on that bank account at the time the checks were written. The rebuttable presumption is only overcome by clear and convincing evidence that the property falls within a statutory exception listed in section 503(a) of the Illinois Marriage and Dissolution of Marriage Act. *In re Marriage of Hegge*, 285 Ill. App. 3d 138, 141 (1996). The burden of proof lies with the party claiming nonmarital property. *Id.* "Any doubts as to the nature of the property are resolved in favor of finding that the property is marital." *Id.*

¶ 59     Before a court distributes property in a divorce action, it must determine whether the property is marital or nonmarital. *In re Marriage of Drone*, 217 Ill. App. 3d 758, 764 (1991). Here, the trial court made no finding as to whether Toni's bank account was marital or nonmarital property and simply awarded her the account without even knowing the amount of funds therein.

16

Further, the trial court did not even address the fact that each party was a signatory on the other's bank account when the payments were issued to the bankruptcy trustee.

¶ 60    Marital property is defined as all property "acquired subsequent to the marriage." 750 ILCS 5/503(a) (West 2022). Nonmarital property may be transmuted into marital property "[i]f marital and non-marital property are commingled by one estate being contributed into the other" resulting in a loss of identity of the contributed property. *Id.* § 503(c)(1). "The rationale for this rule is that the spouse's 'failure to properly segregate nonmarital property, by commingling it with marital property, evinces an intent to treat the former as part of the marital estate.' " *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 672-73 (2008) (quoting *In re Marriage of Wojcik*, 362 Ill. App. 3d 144, 154 (2005)). "Illinois case law holds that the party seeking the benefit of a section 503(a) exception to the presumption of marital property *** bears the burden of proof." *In re Marriage of Didier*, 318 Ill. App. 3d 253, 265 (2000). This burden would again fall to Toni who would be "required to trace the asserted nonmarital source of the funds in the accounts by clear, convincing and affirmative evidence." *Id.*

¶ 61    Toni testified that the funds in her bank account stemmed from State employment backpay related to unreceived raises from 2012 to 2015 that she ultimately received in June 2019. However, the amount of the alleged backpay was not provided, and no documentation related to the alleged backpay payment was submitted. Further, based on Toni's testimony, the backpay deposit was made after her civil union to Shawn, after the first $15,000 payment was issued to the bankruptcy trustee in May 2019, and was placed into a bank account after Shawn was added to the account.

¶ 62    Toni also claimed that the funds in that account included the proceeds from the sale of her house as well as income from her current employment. She stated that the sale proceeds amounted to approximately $6,000 and the sale of the house occurred in March 2019. Based on this

17

testimony, that deposit would also have been after the parties entered into their civil union and Shawn was added to the bank account. Further, Toni provides no argument as to why her employment income—that was also deposited into the same account—would not be marital property when employment income earned while married is not exempted from a marital property classification. 750 ILCS 5/503(a) (West 2022). More importantly, no tracing of any of the funds in Toni's bank account was attempted at the hearing.

¶ 63    Here, the trial court failed to classify Toni's bank account as marital property, nonmarital property, or nonmarital property transmuted into marital property. Regardless, in order to determine whether the bank account was nonmarital property, analysis of the account and tracing of funds would be required. *Didier*, 318 Ill. App. 3d at 265. However, no bank statements were placed into evidence, and no tracing of funds occurred. Given the lack of evidence on this issue, it would be impossible for Toni to rebut the presumption that the funds in her bank account were marital property. That failure also makes it extremely difficult to reconcile her claim of a "loan" when the loan stemmed from marital, as opposed to nonmarital, funds. While I believe it was error for the trial court to not classify the asset as marital or nonmarital, given the lack of evidence in this case, the error is harmless because any doubt as to the nature of the bank account is resolved in finding the bank account was marital property. See *Hegge*, 285 Ill. App. 3d at 141.

¶ 64    A decision is against the manifest weight of the evidence "where the opposite conclusion is clearly evident or where the court's findings are unreasonable, arbitrary, and not based on any of the evidence." *Matchen*, 372 Ill. App. 3d at 946. Here, no evidence beyond Toni's testimony was submitted to rebut the presumption of a gift. Further, any finding of credibility related to her testimony is questionable considering that, based on Toni's testimony, the payment to the trustee was made from funds she received as part of her backpay settlement from the State. However,

18

based on Toni's testimony, the backpay funds were not received until after the first payment of $15,000 was issued to the bankruptcy trustee. Even if the proceeds from the sale of Toni's house three months prior to the first payment are considered, the sale proceeds only amounted to $6,000, and the first check issued was $15,000. No evidence as to source of the remaining $9,000 was submitted.

¶ 65    It was Toni's burden to rebut the presumption of a gift as well as the presumption that the funds in her bank account were marital property. However, insufficient evidence to rebut either presumption was submitted. As such, the circuit court's classification of the $29,500 payments as loans was against the manifest weight of the evidence. Accordingly, I would vacate that finding, revise the judgment to eliminate Shawn's obligation to repay the $29,500, and affirm the remainder of the order.

¶ 66    For the foregoing reasons, I concur in part and dissent in part.